Jason B. Lattimore
**The Law Office Of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile:  (973) 264-1159

*Attorneys for Plaintiff,*
*Interlink Products International, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HDS TRADING CORP. (d/b/a HOME BASICS), and NOMORERACK.COM INC., <br><br> Defendants. | Case No: <br> CIVIL ACTION <br><br><br> **COMPLAINT &** <br> **JURY TRIAL DEMAND** |

Plaintiff, Interlink Products International, Inc. (hereinafter "Interlink" or "Plaintiff"), by and through its undersigned attorney, hereby complains of Defendants, HDS Trading Corp. ("HDS") and Nomorerack.com Inc. ("Nomorerack"), as follows:

### THE PARTIES

1. Plaintiff is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, NJ 07036.

2. On information and belief, Defendant HDS is a New York corporation with its principal place of business at 1305 Jersey Avenue, North Brunswick, New Jersey 08902.

3. On information and belief, Defendant Nomorerack is a Delaware corporation with its principal place of business at 381 Park Avenue S., New York, New York 10016.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims alleged pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331. The Court also has jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims alleged are so related to the claims over which the Court has original jurisdiction that they form part of the same case.

5. This Court has personal jurisdiction over Defendant HDS in that it both resides in this district and does business regularly in this district.

6. This Court has personal jurisdiction over Defendant Nomorerack in that it does business regularly in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## NATURE OF THE CLAIMS

8. This case arises out of Defendants' use of false and misleading representations and omissions regarding its showerhead products to unfairly compete with Interlink. Defendants misrepresent the nature of their products to potential purchasers by using photographs of Interlink's products to sell their own. Defendants also sell illegal showerheads without disclosing that fact to purchasers and in violation of federal law in an effort to gain a competitive advantage over reputable showerhead manufacturers such as Interlink. Defendant HDS has gone so far as to affirmatively misrepresent that its products comply with applicable laws when, in fact, they violate a host of statutory and regulatory provisions and appear to infringe a valid U.S. patent. Defendants have unlawfully benefited from their deceptive conduct to the detriment of Interlink. To address these wrongs, Interlink asserts claims against Defendants for false

advertising under the Lanham Act, false advertising under N.J.S.A. § 56:8-2 *et seq.*, common law unfair competition and tortious interference with prospective economic advantage.

## FACTS

9. Plaintiff, Interlink, is a New Jersey based research & development company specializing in the development, manufacturing and marketing of innovative consumer and professional healthcare products in the shower and bath, personal care and cleaning categories. The company was founded in 1996 and built on conceptual and technological innovation, high product quality and excellence in customer service.

10. Interlink's products include several lines of showerheads that can be purchased from various sources, including Wayfair.com and Amazon.com. Interlink's products can also be purchased from major retailers such as Wal-Mart and Bed Bath & Beyond.

11. Interlink has worked diligently to cultivate and preserve its reputation as a provider of high quality showerheads. Interlink's brands are symbolic of the goodwill and consumer recognition built up by Interlink through the maintenance of high quality standards, and substantial investment of time and effort developing and promoting its products.

12. Defendants compete directly with Interlink for sales of showerheads to online consumers. On information and belief, Defendants also compete with Interlink for showerhead sales through other market channels.

13. HDS produces showerheads and other products which it sells and promotes through wholesale and retail channels, including Wayfair.com and several other online retailers.

14. HDS's showerheads are sold under multiple brands, including "Home Basics."

15. Nomorerack is an online retailer that sells HDS's showerhead products through its website Nomorerack.com.

Defendants Use Interlink's Product Images To Sell HDS Products

16. On information and belief, HDS assists online retailers such as Nomorerack, with promoting its showerheads by providing them with photographs and product descriptions to be used in the online product listings that customers review when making purchasing decisions.

17. Rather than provide genuine representations of their products, the images Defendants use to promote at least one of the HDS showerhead lines are actually images of Interlink's products.

18. For instance, Defendants present the Home Basics model SM10318 shower head to customers using images of Interlink's RAINSPA® 2 in 1 Multi-Shower product, rather than the actual product they are selling. Photographs of Interlink's RAINSPA® product are attached to this Complaint as Exhibit A. Screenshots of Home Basics SM10318 shower head product listings from various websites, each showing the RAINSPA® 2 in 1 product instead of the product actually being sold, are attached as Exhibit B. A photograph of the product customers receive when they order the Home Basics SM10318 shower head from the Nomorerack.com website is attached as Exhibit C.

19. Defendants chose the image of Interlink's RAINSPA® product no doubt because of its extraordinary success and popularity. The product, originally sold exclusively through Bed Bath & Beyond, is one of the most successful showerheads in the history of that company. Literally hundreds of thousands of units of the RAINSPA® 2 in 1 product have been sold. Defendants seek to trade off of Interlink's goodwill by misrepresenting that their product is the RAINSPA® product or is the same as that product.

20. By using photos of Interlink's showerheads to sell its own products, Defendants misrepresented the nature and qualities of the showerheads they sell.

21.     Defendants' representation of the Home Basics SM10318 shower head to consumers using pictures of Interlink's products is literally false.

22.     The appearance of showerheads is a material factor bearing on consumer's purchasing decisions.

23.     Absent Defendants' misrepresentation of the Home Basics SM10318 shower head, it is likely that Interlink would have made the sales to customers that Defendants made.

24.     Defendants unlawfully benefitted financially from the unauthorized and deceptive use of Interlink's product photographs to misrepresent the characteristics of their product.

25.     Interlink's images of its RAINSPA® 2 in 1 product used to promote the product on its packaging and online also constitute Interlink's trade dress.

26.     Interlink's trade dress is distinctive, non-functional and has achieved significant secondary meaning.

27.      Defendants' copying and use of Interlink's trade dress created a likelihood of confusion between Defendants' products and Interlink's products.  Defendants' sale of showerheads that were promoted using the same or nearly identical product photographs and imagery is likely to cause confusion as to source, affiliation or sponsorship with respect to Defendants' showerheads.

<u>Defendants Sell Illegal, Infringing Products To Unfairly Compete With Interlink</u>

28.     Interlink is one of the leading sellers of showerheads online.

29.     Among other online retailers, Interlink sells its products pursuant to a supplier agreement with Wayfair LLC ("Wayfair"), one of the largest online retailers of consumer products.

30.     HDS competes directly with Interlink for sales of showerheads to Wayfair.

31. As a condition of selling products to Wayfair, Wayfair requires wholesalers such as HDS to execute agreements in which they specifically warrant that (1) they will "comply with and ensure that all merchandise comply with all product . . . testing, and certification requirements under applicable laws . . . regulations . . . or other requirements now or hereafter in effect, of any government authority of competent jurisdiction"; and (2) the merchandise supplied to Wayfair does not infringe any patent or other intellectual property rights of a third party. A copy of the Wayfair Supplier Agreement and Standard Terms is attached as Exhibit D.

32. On information and belief, HDS made the representations set forth in the preceding paragraph to Wayfair.

33. Contrary to its representations to Wayfair and, on information and belief, other customers, HDS's showerheads do not comply with product testing and certification requirements under U.S. law.

34. The Energy Policy Act of 1992, and the regulations promulgated pursuant thereto (collectively the "EP Act") require that all showerheads manufactured after January 1, 1994 have a maximum flow rate of "2.5 gallons per minute (9.5 liters per minute) when measured at a flowing pressure of 80 pounds per square inch gage (552 kilopascals)." 10 CFR Part 430.32(p); 42 U.S.C. § 6295(j). The EP Act also requires all showerheads to "meet the requirements of ASME/ANSI A112.18.1M-1989, 7.4.3(a)" (42 U.S.C. § 6295(j)), which sets forth additional standards for showerheads.

35. In addition to the flow rate restrictions imposed under 10 CFR Part 430.32(p), the federal regulations promulgated pursuant to the EP Act (specifically 16 C.F.R. Part 305.16) require that showerheads "bear a permanent, legible marking indicating the flow rate," that they be marked "A112.18.1M" to reflect compliance with the applicable ASME (American Society of

Mechanical Engineers) standard, and that the packaging for all showerheads reflect the flow rate and be marked with "A112.18.1M."

36. The flow rate restrictions and related requirements imposed by the EP Act were enacted to serve the important public interest of water conservation.

37. Compliance with the flow rate restrictions of the EP Act impacts the characteristics of showerheads by limiting the amount of water expelled by the showerhead at a given water pressure over any given period of time. Successful showerhead manufacturers, such as Interlink, sell products designed to achieve excellent performance at lower flow rates. The production of high-performing compliant products involves research and the expenditure of resources that, ultimately, increases the cost of such products.

38. Manufacturers that illegally sell non-compliant, high-flow showerheads gain an unfair competitive advantage over compliant manufacturers by (a) avoiding the cost of producing compliant showerheads that perform to levels acceptable to consumers, which allows them to sell at lower prices; and (b) by misleading consumers into believing that the showerheads they sell are competitive with or superior to compliant showerheads (because the high water pressure of their showerheads provides a better showering experience) when, in fact, the performance of their non-compliant showerheads is attributable to an unlawfully high flow rate.

39. In promoting its showerheads to Wayfair, HDS falsely represented that it and its products were and would remain in compliance with applicable testing and certification laws when, in fact, HDS unlawfully sells showerheads that violate the numerous testing and certification requirements imposed by the EP Act.

40. On information and belief, HDS has sold a significant number of showerheads to Wayfair and through other channels. On information and belief, most if not all of those

showerheads do not comply with the EP Act's flow rate and labeling restrictions or the ASME A112.18.1M-1989 standard. Pictures of samples of HDS's showerheads showing that they do not contain the requisite 2.5 gallon-per-minute flow regulator are attached as Exhibit E.

41. HDS also sells its illegal products under the SUNBEAM trademark, presumably pursuant to a license.

42. Further, on information and belief, at least one of HDS's products, HDS's 5 Function Deluxe Twin showerhead, infringes U.S. Patent No. 7,299,510 ("the '510 patent") – contrary to HDS's representation that its products do not infringe. See attached Exhibits F (the '510 patent) and G (comparison of HDS's device to claim 1 of the patent). Although this patent does not belong to Interlink, its infringement by HDS is consistent with a pattern of deception and willful disregard for government regulations and the intellectual property rights of others for the purpose of gaining an unfair competitive advantage.

43. HDS continues to misrepresent the nature of its showerheads supplied to Wayfair in order to unfairly compete with Interlink.

44. HDS's representation that its products comply with applicable laws and regulations when, in fact, its showerheads do not comply with the EP Act was and is literally false.

45. On information and belief, HDS's representation that its products do not infringe third-party intellectual property rights was and is literally false.

46. The question of whether HDS's showerheads complied with the law was material to Wayfair's entering into a supply agreement with HDS and to consumers' decisions to purchase Home Basics brand showerheads.

47. HDS knew or reasonably should have known that its showerheads did not comply with the EP Act.

48. HDS knew or reasonably should have known that its showerheads infringe the '510 patent.

49. HDS's sale of illegal and infringing showerheads constitutes a deception of purchasers of those products.

50. Absent HDS's misrepresentations, it would not have made its illegal sales in competition with Interlink and it is likely that Interlink would have made the sales that HDS made.

51. HDS's misrepresentations regarding the nature of its showerheads deceive consumers and unfairly enhance HDS's market position and demand for its products. On information and belief, the illegally high flow rates of HDS's showerheads positively influence online customer reviews of the showerheads which, in turn, have the tendency to increase sales of HDS's showerheads, reducing Interlink's sales and unfairly enhancing HDS's ability to compete with Interlink for future sales.

52. Defendant Nomorerack sell's HDS's illegal and infringing products to unwitting consumers.

53. Nowhere in Defendants' product information is it disclosed that their showerheads violate U.S. law. To the contrary, Defendants sell their showerheads as if the showerheads were fully compliant, which they clearly are not.

54. Defendants' sale of its showerheads in the United States necessarily implies that the showerheads have been manufactured in accordance with and comply with the law.

55. On information and belief, environmental compliance is material to a significant number of consumers who have purchased Defendants' showerheads.

56. On information and belief, consumers who purchased Defendants' showerheads would not have done so had they known the true nature of the showerheads.

57. Through their misrepresentations and omissions, Defendants have unfairly enhanced their goodwill in the market and market position as compared to Interlink, have unlawfully deprived Interlink of sales and customer goodwill, and have otherwise unfairly competed with Interlink.

58. Absent Defendants' misrepresentations and omissions, it was likely that the consumers who purchased Defendants' products would have purchased Interlink's products.

59. Defendants' foregoing conduct described in this Complaint was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Interlink to an award of enhanced damages and reasonable attorney's fees.

60. The acts of said Defendants described herein have been and continue to be in bad faith and conscience and in deliberate disregard of Interlink's rights and with the intention of depriving Interlink of monies that Interlink would otherwise receive.

61. Through the foregoing conduct described in this Complaint, Defendants have acted in wanton and willful disregard of Interlink's rights such that Interlink is entitled to an award of punitive damages.

## COUNT I
### False Advertising - 15 U.S.C. § 1125(a)
### (As To HDS and Nomorerack)

62. Plaintiff restates and realleges the allegations of paragraphs 1-61 as if fully set forth herein.

63. Through the foregoing conduct, including Defendants' (a) misrepresentation in their promotional materials that their products are Interlink's products when in fact they are not; (b) misrepresentation in their promotional materials that their products are the same as Interlink's products; and (c) omissions with respect to the legality of their showerhead products, Defendants made and continue to make false or misleading statements and omissions as to the nature and qualities of their showerheads and in the promotion of those showerheads.

64. Defendants' false and misleading statements and omissions regarding their showerheads are literally false, deceived and continue to deceive purchasers, and otherwise have the tendency to deceive potential purchasers of Defendants' showerheads.

65. The deception brought about by Defendants' false and misleading statements and omissions detailed in the preceding paragraphs was and is material in that those statements and omissions likely influenced and will continue to influence purchasing decisions concerning Defendants' showerheads.

66. Defendants' goods travel in interstate commerce.

67. Defendants' deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss in market share, for which there is no adequate remedy at law.

68. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

## COUNT II
### False Advertising - 15 U.S.C. § 1125(a)
### (As To HDS Only)

69. Plaintiff restates and realleges the allegations of paragraphs 1-68 as if fully set forth herein.

70. Through the foregoing conduct, including HDS's misrepresentations regarding the legality and non-infringement of its showerheads, HDS made and continues to make false or misleading statements and omissions as to the nature and qualities of its showerheads and in the promotion of those showerheads.

71. HDS's false and misleading statements and omissions regarding its showerheads are literally false, deceived and continue to deceive purchasers, and otherwise have the tendency to deceive potential purchasers of Defendants' showerheads.

72. The deception brought about by HDS's false and misleading statements and omissions detailed in the preceding paragraphs was and is material in that those statements and omissions likely influenced and will continue to influence purchasing decisions concerning HDS's showerheads.

73. HDS's goods travel in interstate commerce.

74. HDS's deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss in market share, for which there is no adequate remedy at law.

75. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

### COUNT III
### False Advertising – N.J.S.A. § 56:8-2 *et seq*.
### (As To HDS and Nomorerack)

76. Plaintiff restates and realleges the allegations of paragraphs 1-75 as if fully set forth herein.

77. Defendants' showerheads are consumer goods.

78. Through their conduct in connection with the sale and advertisement of their showerheads, Defendants have used and employed unconscionable commercial practices, deception, fraud, and misrepresentations concerning the nature of its showerheads and has knowingly concealed, suppressed, or omitted material facts concerning the nature of their showerheads with intent that purchasers rely upon such concealment, suppression or omission.

79. As a result of the foregoing conduct, Interlink has suffered ascertainable loss including lost sales and lost market share.

80. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

### COUNT IV
### Unfair Competition – N.J.S.A. § 56:4-1
### (As To HDS and Nomorerack)

81. Plaintiff restates and realleges the allegations of paragraphs 1-80 as if fully set forth herein.

82. Through the acts described above, Defendants have willfully and knowingly engaged in unfair acts or practices and unfair methods of competition, including the bad faith usage of Interlink's trademarks, trade dress and goodwill.

83. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

### COUNT V
### Common Law Unfair Competition
### (As To HDS and Nomorerack)

84. Plaintiff restates and realleges the allegations of paragraphs 1-83 as if fully set forth herein.

85. Through the foregoing conduct, Defendants have committed common law unfair competition.

86. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

### COUNT VI
### Tortious Interference With Prospective Economic Advantage
### (As To HDS and Nomorerack)

87. Plaintiff restates and realleges the allegations of paragraphs 1-86 as if fully set forth herein.

88. Through the foregoing conduct, Defendants intentionally and improperly interfered with Interlink's prospective sales to customers.

89. By deceiving customers into believing that its illegal showerheads comply with the law, Defendants gained sales and unlawfully prevented Interlink from selling its showerheads to customers.

90. It is likely that, absent Defendants' wrongful and deceptive conduct, Interlink would have made the sales that Defendants made.

91. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunction relief, damages, punitive damages and any other relief the court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

I. That each Defendant, its officers, agents, servants, employees, attorneys, privies, subsidiaries, divisions, successors and assigns, and all persons and organizations in active concert, participation or combination with any of the foregoing be permanently enjoined from and/or Ordered to:

A. Cease making or employing any false or misleading statements or omissions concerning the nature of Defendants' showerheads as such statements concern compliance with applicable statutes or regulations;

B. Immediately take all steps necessary to remove Defendants' showerheads that do not comply with applicable statutes and regulations from the market, including Wayfair.com, and otherwise stop selling showerheads that do not comply with applicable laws;

C. Provide notice to all customers and resellers of Defendants' showerheads disclosing that the showerheads do not comply with applicable regulations and offering a full refund for all quantities purchased; and

D. Issue and properly disseminate a recall notice with respect to all purchasers of Defendants' showerheads in the United States offering a full refund to any consumers who purchased Defendants' products.

II. That Plaintiff obtain the following relief:

A. An accounting and disgorgement of all profits Defendants have gained through the sale of showerheads in competition with Interlink;

B.  Compensatory damages in an amount not less than $10,000,000;

C.  Treble damages;

D.  Reasonable attorneys' fees and costs;

E.  Punitive damages in an amount not less than $20,000,000; and

F.  Any other relief in Interlink's favor that the court deems just and proper.

Dated: March 5, 2015                              Respectfully submitted,

                                                                                 The Law Office Of
JASON B. LATTIMORE, ESQ. LLC

By  s/ Jason B. Lattimore
    Jason B. Lattimore
    55 Madison Avenue, Suite 400
    Morristown, NJ 07960
    Telephone: (973) 998-7477
    Facsimile:  (973) 264-1159

    *Attorneys for Plaintiff*
    *Interlink International Products, Inc.*

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by jury.

Dated: March 5, 2015                        Respectfully submitted,

                                                    The Law Office Of
                                                  JASON B. LATTIMORE, ESQ. LLC

                                          By  s/ Jason B. Lattimore
                                                Jason B. Lattimore
                                                55 Madison Avenue, Suite 400
                                                Morristown, NJ 07960
                                                Telephone: (973) 998-7477
                                                Facsimile:  (973) 264-1159

                                                *Attorneys for Plaintiff*
                                                *Interlink International Products, Inc.*

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

The undersigned hereby certifies that, to the best of his knowledge, this matter is not the subject of any other action pending in any court, or any pending or contemplated arbitration or administrative proceeding.  The undersigned further certifies that, to the best of his knowledge, there are no additional parties who should be joined in this matter.

Dated: March 5, 2015					Respectfully submitted,

							The Law Office Of
							JASON B. LATTIMORE, ESQ. LLC

							By  s/ Jason B. Lattimore
							     Jason B. Lattimore
							     55 Madison Avenue, Suite 400
							     Morristown, NJ 07960
							     Telephone: (973) 998-7477
							     Facsimile:  (973) 264-1159

							     *Attorneys for Plaintiff*
							     *Interlink International Products, Inc.*