Jason B. Lattimore
**The Law Office Of
JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile:  (973) 264-1159

*Attorneys for Plaintiff,
Interlink Products International, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HDS TRADING CORP. (d/b/a HOME BASICS), and NOMORERACK.COM INC.,<br><br>Defendants. | Case No: 3:15-cv-01642-PGS-TJB<br>CIVIL ACTION<br><br>**SECOND AMENDED COMPLAINT &<br>JURY TRIAL DEMAND** |

Plaintiff, Interlink Products International, Inc. (hereinafter "Interlink" or "Plaintiff"), by and through its undersigned attorney, hereby complains of Defendants, HDS Trading Corp. ("HDS") and Nomorerack.com Inc. ("Nomorerack"), as follows:

### THE PARTIES

1. Plaintiff is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, NJ 07036.

2. On information and belief, Defendant HDS is a New York corporation with its principal place of business at 1305 Jersey Avenue, North Brunswick, New Jersey 08902.

3. On information and belief, Defendant Nomorerack is a Delaware corporation with its principal place of business at 381 Park Avenue S., New York, New York 10016.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims alleged pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendant HDS in that it both resides in this district and does business regularly in this district.

6. This Court has personal jurisdiction over Defendant Nomorerack in that it does business regularly in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## NATURE OF THE CLAIMS

8. This case arises out of Defendants' deceptive use of photographs of Interlink's products to sell their own product. Defendants have unlawfully benefited from this deceptive conduct to the detriment of Interlink. Interlink asserts claims against Defendants for false advertising, passing off and trade dress infringement under the Lanham Act.

## FACTS COMMON TO ALL COUNTS

9. Plaintiff, Interlink, is a New Jersey based research & development company specializing in the development, manufacturing and marketing of innovative consumer and professional healthcare products in the shower and bath, personal care and cleaning categories. The company was founded in 1996 and built on conceptual and technological innovation, high product quality and excellence in customer service.

10. Interlink's products include several lines of showerheads that can be purchased from various sources, including Wayfair.com and Amazon.com. Interlink's products can also be purchased from major retailers such as Wal-Mart and Bed Bath & Beyond.

11. Interlink has worked diligently to cultivate and preserve its reputation as a provider of high quality showerheads. Interlink's brands and its distinctive trade dress are symbolic of the goodwill and consumer recognition built up by Interlink through the maintenance of high quality standards, and substantial investment of time and effort developing and promoting its products.

12. Defendants compete directly with Interlink for sales of showerheads to online consumers. On information and belief, Defendants also compete with Interlink for showerhead sales through other market channels.

13. HDS produces showerheads and other products which it sells and promotes through wholesale and retail channels, including Wayfair.com and several other online retailers.

14. HDS's showerheads are sold under multiple brands, including "Home Basics." HDS also sells its products under the SUNBEAM trademark, presumably pursuant to a license.

15. Nomorerack is an online retailer that advertises, promotes and sells HDS's showerhead products through its website Nomorerack.com.

Defendants Use Interlink's Product Images To Sell HDS Products

16. At all relevant times, HDS provided, contributed to, approved of, or had actual or constructive knowledge of the photographs and product descriptions used by online retailers such as Nomorerack in the product listings that consumers review when determining whether to purchase HDS products.

17.     Rather than display genuine representations of their products, the images Defendants use to promote at least one of the HDS showerhead lines are actually images of Interlink's products.

18.     For instance, Defendants present the Home Basics model SM10318 shower head to customers using images of Interlink's RAINSPA® 2 in 1 Multi-Shower product, rather than the actual product they are selling.  Photographs of Interlink's RAINSPA® product are attached to this Complaint as Exhibit A.  Screenshots of Home Basics SM10318 shower head product listings from various websites, each showing the RAINSPA® 2 in 1 product instead of the product actually being sold, are attached as Exhibit B.  A photograph of the product customers receive when they order the Home Basics SM10318 showerhead from, for example, the Nomorerack.com website is attached as Exhibit C.

19.     By way of further example, in addition to displaying the RAINSPA® 2 in 1 product, Defendant Nomorerack also posted an image of a second Interlink product in its effort to promote and sell the Home Basics SM10318 showerhead.

20.     The third parties displaying images of Interlink's products to promote HDS's products, including without limitation Nomorerack, serve as actual or apparent agents of HDS and work in concert with HDS with respect to the advertising, promotion and sale of HDS's products.  For example, Blue Donuts, one of the four online retailers whose listings for the Home Basics SM10318 showerhead displayed the RAINSPA® 2 in 1 product, appears to serve as an online retail agent for HDS.  Blue Donuts sells an extensive selection of HDS products.  Blue Donuts' Amazon.com listings, alone, feature in excess of 180 HDS products, which is indicative of a collaborative relationship between Blue Donuts and HDS.  HDS has acknowledged that an online retailer selling its products can be characterized as an agent for HDS.  Further, each of the

websites selling the Home Basics SM10318 showerhead using Interlink's images prominently displayed HDS's HOME BASICS trademark in their online product listings.

21. It is a common and expected business practice for a producer of consumer products, such as HDS, to monitor the online sale of products it has placed into commerce to be sold by third parties, including the manner in which the products are marketed online under the producer's trademarks. HDS, like other producers who provide their products to resellers, has reason to monitor the sale of its showerhead products online. The manner in which the products are marketed and sold impacts the level of sales, and correspondingly, the volume of HDS's future sales and profits. The products are also sold under the HOME BASICS trademark (Registration No. 4289361) and trademark logo, which implicates HDS's trademark rights and HDS's interests in controlling the manner in which its brand is utilized and presented to the public.

22. HDS can reasonably be expected to have monitored the online listings for its products in light of its vested interest in how the products were being marketed and the use of its HOME BASICS trademark by third parties to market the products. At minimum, HDS should have been aware the contents of the online listings for its products. Monitoring the online listings for one's products is a simple, non-labor-intensive matter involving merely reviewing the pertinent online product listings, just as any consumer shopping for the product would do. HDS had actual or constructive knowledge that its product was being sold online using images of Interlink's products and/or images of different products than those sold, yet continued to supply the product to the third-parties engaging in that conduct and took no action prior to being sued to stop the conduct.

23. HDS has benefitted financially from the sale of its products by the identified third parties, and on information and belief other third parties, using images of Interlink's products. Likewise, Nomorerack has benefitted from its sale of HDS products using the images of Interlink's products Nomorerack posted on its website.

24. Nomorerack actively posted images of Interlink's products for the purpose of selling HDS showerheads on the Nomorerack website.

25. Nomorerack had actual or constructive knowledge that the images it posted on its website for the purpose of selling HDS products misrepresented the nature and appearance of those products.

26. Interlink's RAINSPA® 2 in 1 product has been extraordinarily successful and popular. The product, which Interlink launched in 2009, originally sold exclusively through Bed Bath & Beyond, and is one of the most successful showerheads in the history of that company. Literally hundreds of thousands of units of the RAINSPA® 2 in 1 product have been sold. The RAINSPA® 2 in 1 product was regularly advertised in Bed Bath & Beyond circulars distributed to millions of households across the United States. In addition, Interlink sold large quantities of this product to several large, high-profile internet customers for resale, including Groupon, where it received wide national on-line exposure. Interlink also sells the same product online, under its DREAMSPA® brand. To Interlink's knowledge, Interlink is the only company in the United States that produces a dual showerhead system having the appearance of the RAINSPA®/ DREAMSPA® 2 in 1 product.

27. The image of the RAINSPA®/ DREAMSPA® 2 in 1 product that was used in the sale of Defendants' products is the same image used by Interlink on its RAINSPA® 2 in 1 product packaging, in the listings for the product as sold by online resellers such as Groupon, and

in Interlink's online listings for the product under the DREAMSPA® mark. The image is also similar to the images used to sell the product in the circulars distributed by Bed Bath & Beyond. Defendants seek to trade off of Interlink's goodwill by misrepresenting that their product is the RAINSPA®/ DREAMSPA® product or is the same as that product.

28. By using photos of Interlink's showerheads to sell HDS products, Defendants misrepresented the nature and qualities of the showerheads they sell.

29. Defendants' representation of the Home Basics SM10318 shower head to consumers using pictures of Interlink's products is literally false.

30. The appearance of showerheads is a material factor bearing on consumer's purchasing decisions.

31. Absent Defendants' misrepresentation of the Home Basics SM10318 showerhead, it is likely that Interlink would have made the sales to customers that Defendants made.

32. Defendants unlawfully benefitted financially from the unauthorized and deceptive use of Interlink's product photographs to misrepresent the characteristics of their product.

33. Defendants' conduct described in this Complaint was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Interlink to an award of enhanced damages and reasonable attorney's fees.

34. The acts of said Defendants described herein were done in bad faith and conscience and in deliberate disregard of Interlink's rights and with the intention of depriving Interlink of monies that Interlink would otherwise receive.

**COUNT I**
**False Advertising - 15 U.S.C. § 1125(a)**
**(As To HDS and Nomorerack)**

35. Plaintiff restates and realleges the allegations of paragraphs 1-34 as if fully set forth herein.

36. Through the foregoing conduct, including Defendants' (a) misrepresentation in their promotional materials that their products are Interlink's products when in fact they are not; and (b) misrepresentation in their promotional materials that their products are the same as Interlink's products, Defendants made and continue to make false or misleading statements as to the nature and qualities of their showerheads and in the promotion of those showerheads.

37. Defendants' false and misleading statements regarding their showerheads are literally false, deceived and continue to deceive purchasers, and otherwise have the tendency to deceive potential purchasers of Defendants' showerheads.

38. The deception brought about by Defendants' false and misleading statements detailed in the preceding paragraphs was and is material in that those statements likely influenced and will continue to influence purchasing decisions concerning Defendants' showerheads.

39. Defendants' goods travel in interstate commerce.

40. Defendants' deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss in market share, for which there is no adequate remedy at law.

41. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

## COUNT II
### Passing Off - 15 U.S.C. § 1125(a)
### (As To HDS and Nomorerack)

42. Plaintiff restates and realleges the allegations of paragraphs 1-41 as if fully set forth herein.

43. The photograph used to promote, market and sell the RAINSPA®/DREAMSPA® 2 in 1 product is inherently distinctive and serves as an identifier of source with respect to Interlink's product. The angle at which the photograph depicts the product, the position of the product's components, the background color and the portion of product shown all combine to create a distinct impression that consumers associate with the source of the product.

44. Alternatively, due to its popularity, extensive advertising, and extensive public exposure in Bed Bath & Beyond stores and online, the image of the RAINSPA®/DREAMSPA® 2 in 1 product at issue has acquired secondary meaning such that a substantial segment of consumers identify the specific photograph Interlink uses to promote the RAINSPA®/DREAMSPA® 2 in 1 product with the RAINSPA® and/or DREAMSPA® brands and, correspondingly, Interlink.

45. The image of the RAINSPA®/DREAMSPA® 2 in 1 product used online to sell HDS showerheads is literally identical to the image used by Interlink to promote and sell Interlink's RAINSPA®/DREAMSPA® 2 in 1 product. The respective images thus depict the product from the same angle, highlight the same product features and create the same impression on consumers viewing the images.

46. The use of the image of Interlink's RAINSPA® 2 in 1 product to sell an HDS showerhead is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Interlink, and as to the origin, sponsorship, or approval of HDS showerheads by Interlink.

9

47. The fact that the images are identical and that the products are sold through the same commercial channels exacerbates the likelihood of confusion among consumers. For example, consumers shopping online for showerheads who view the parties' respective listings, or who are looking to replace their RAINSPA®/DREAMSPA® 2 in 1 showerhead system with the same model will be confused into thinking that the HDS product is the Interlink product and that the products share a common source because the pictures used to depict the product are precisely the same.

48. The fact that the listings for the HDS product associate the HOME BASICS trademark and, in one instance, the Home Basics trademark logo, with the distinctive Interlink product image also gives rise to a likelihood that consumers will mistakenly identify the HOME BASICS brand with Interlink.

49. Defendants have thus made false and misleading representations and descriptions of fact, and false designations of origin of their goods in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

50. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's RAINSPA®/DREAMSPA® 2 in 1 product.

51. Defendants' actions have caused and, if continued, are likely to continue causing substantial injury to the public and to Interlink.

52. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs

pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117, along with any other relief the court deems just.

## COUNT III
### Trade Dress Infringement – 15 U.S.C. § 1125(a)
### (As To HDS and Nomorerack)

53. Plaintiff restates and realleges the allegations of paragraphs 1-52 as if fully set forth herein.

54. Due to its popularity, extensive advertising, and public exposure in Bed Bath & Beyond stores and circulars, and online, the appearance of the RAINSPA®/DREAMSPA® 2 in 1 product has acquired secondary meaning such that a substantial segment of consumers identify the appearance of the product with Interlink.

55. The following non-functional aspects of the appearance of the RAINSPA®/DREAMSPA® 2 in 1 product, in combination, constitute Interlink's protectable trade dress:

   a. The specific shape of the fixed showerhead, meaning the specific aesthetic curves and contours of the showerhead, which can be described as a bell-shaped element at its top, flowing downward into a larger bell-shaped element that flares outward at its bottom and has an angular edge with concave indentations at points along the edge.

   b. The specific shape of the head portion of the handheld sprayer, meaning the specific aesthetic curves and contours of the sprayer head, which can be described as a dome-shaped element with an angular edge that has concave indentations at points along the edge.

   c. The aesthetic aspects of the appearance of the face of the fixed showerhead, specifically:

      i. The fact that the chrome on the body of the showerhead continues inward at the body's lower edge toward the center of the face of the showerhead such that the setting dial on the face of the showerhead sits within and is bordered by a band of chrome that converges seamlessly with the body of the showerhead at the edge.

     ii. The convex shape and angle of the face of the showerhead, including the outer chrome band.

    iii. The spray nozzle pattern on the showerhead setting dial situated on the face of the fixed showerhead.

    iv. The specific shape of the raised design on the showerhead setting dial situated on the face of the fixed showerhead.

     v. The color and color variation on the showerhead setting dial situated on the face of the fixed showerhead.

    vi. The shape of the setting dial lever and its placement on the setting dial.

d. The aesthetic aspects of the appearance of the face of the handheld sprayer showerhead, specifically:

      i. The fact that the chrome on the body of the showerhead continues inward at the body's lower edge toward the center of the face of the showerhead such that the setting dial on the face of the showerhead sits within and is bordered by a band of chrome that converges seamlessly with the body of the showerhead at the edge.

     ii. The convex shape and angle of the face of the showerhead, including the outer chrome band.

       iii. The spray nozzle pattern on the showerhead setting dial situated on the face of the handheld sprayer.

       iv. The specific shape of the raised design on the showerhead setting dial situated on the face of the handheld sprayer.

       v. The color and color variation on the showerhead setting dial situated on the face of the handheld sprayer.

       vi. The shape of the setting dial lever and its placement on the setting dial.

  e. The specific aesthetic dimensional aspects of the shape of the handle portion of the handheld sprayer, which is ovular and transitions from broad at the bottom to narrow at the top, where the handle meets the sprayer head.

  f. The chrome color of the product.

56. The foregoing trade dress is non-functional. Showerheads exist in a myriad of shapes, designs and finishes, none of which require the combination of elements listed in the preceding paragraph to function effectively, drive consumer demand, or to allow competitors to enjoy non-reputation-related commercial success. To Interlink's knowledge, Interlink is the only showerhead producer in the United States that sells a product combining the foregoing elements embodied by the RAINSPA®/DREAMSPA® 2 in 1 product.

57. In online product listings, the image used to represent a product stands in the place of the product packaging or display model a consumer would encounter in a store. The online product image is the only representation the consumer sees at the point of sale and is, accordingly, the only means for the customer to determine the appearance of the product. Defendants' use of the image of Interlink's RAINSPA®/DREAMSPA® 2 in 1 product to

represent their HDS product online infringes Interlink's distinctive trade dress in the appearance of the RAINSPA®/DREAMSPA® 2 in 1 product.

58. Defendants' copying of Interlink's distinctive trade dress, as described in the preceding paragraphs, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' showerheads are manufactured or distributed by Interlink, or are associated or connected with Interlink, or have the sponsorship, endorsement, or approval of Interlink.

59. Defendants have thus made false and misleading representations and descriptions of fact, and false designations of origin of their goods in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Interlink's goodwill and reputation, for which Interlink has no adequate remedy at law.

60. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Interlink's trade dress.

61. Defendants' actions have caused and, and, if continued, are likely to continue causing substantial injury to the public and to Interlink.

62. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees and costs pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117, along with any other relief the court deems just.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

I.  That each Defendant, its officers, agents, servants, employees, attorneys, privies, subsidiaries, divisions, successors and assigns, and all persons and organizations in active concert, participation or combination with any of the foregoing be permanently enjoined from and/or Ordered to:

A. Cease and refrain from representing or suggesting that their products are Interlink's products or are the same as Interlink's products;

B. Cease and refrain from utilizing any product descriptions, imagery or promotional materials that represent Defendants' products as Interlink's products, or as having been endorsed or provided by Interlink, or that otherwise are likely to confuse consumers as to the source, sponsorship or affiliation of Defendants and their products with respect to Interlink and its products.

C. Cease and refrain from utilizing any product descriptions, imagery, promotional materials, product designs or any other product related elements that copy, mimic, or are confusingly similar to the trade dress employed by Interlink on its products and product promotional materials;

II.  That Plaintiff obtain the following relief:

A. An accounting and disgorgement of all profits Defendants have gained through their unlawful competition with Interlink;

B. Compensatory damages in an amount to be determined at trial;

C. Treble damages;

D. Reasonable attorneys' fees and costs; and

E. Any other relief in Interlink's favor that the court deems just and proper.

Dated: November 2, 2015        Respectfully submitted,

                                              The Law Office Of
                                              JASON B. LATTIMORE, ESQ. LLC

                                              By  s/ Jason B. Lattimore
                                                  Jason B. Lattimore
                                                  55 Madison Avenue, Suite 400
                                                  Morristown, NJ 07960
                                                  Telephone: (973) 998-7477
                                                  Facsimile:  (973) 264-1159

                                              *Attorneys for Plaintiff*
                                              *Interlink International Products, Inc.*


## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by jury.

Dated: November 2, 2015        Respectfully submitted,

                                              The Law Office Of
                                              JASON B. LATTIMORE, ESQ. LLC

                                              By  s/ Jason B. Lattimore
                                                  Jason B. Lattimore
                                                  55 Madison Avenue, Suite 400
                                                  Morristown, NJ 07960
                                                  Telephone: (973) 998-7477
                                                  Facsimile:  (973) 264-1159

                                              *Attorneys for Plaintiff*
                                              *Interlink International Products, Inc.*